# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
### WESTERN DIVISION

JEWELL HEIGHTON,                              Case No. 1:12-cv-38
    Plaintiff,                          Dlott, J.
                                             Litkovitz, M.J.

    vs.

COMMISSIONER OF                              **REPORT AND**
SOCIAL SECURITY,                            **RECOMMENDATION**
    Defendant.

Plaintiff brings this action pursuant to 42 U.S.C. § 405(g) for judicial review of the final

decision of the Commissioner of Social Security (Commissioner) denying plaintiff's application

for disability insurance benefits (DIB). This matter is before the Court on plaintiff's Statement of

Errors (Doc. 8), the Commissioner's response in opposition (Doc. 12), and plaintiff's reply

memorandum. (Doc. 13).

## I. Procedural Background

Plaintiff filed an application for DIB in October 2008, alleging disability since May 31,

2008, due to bipolar disorder, depression, endometriosis, back pain, and knee pain. Plaintiff's

application was denied initially and upon reconsideration. Plaintiff, through a non-attorney

representative, requested and was granted a de novo hearing before Administrative Law Judge

(ALJ) Christopher B. McNeil. Plaintiff and a vocational expert (VE) appeared and testified at

the ALJ hearing. On January 21, 2011, the ALJ issued a decision denying plaintiff's DIB

application. Plaintiff's request for review by the Appeals Council was denied, making the

decision of the ALJ the final administrative decision of the Commissioner.[1]

---

[1] Following entry of the ALJ's unfavorable decision, plaintiff filed a second DIB application and was

## II. Analysis

### A. Legal Framework for Disability Determinations

To qualify for disability benefits, a claimant must suffer from a medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than 12 months. 42 U.S.C. § 423(d)(1)(A). The impairment must render the claimant unable to engage in the work previously performed or in any other substantial gainful employment that exists in the national economy. 42 U.S.C. § 423(d)(2).

Regulations promulgated by the Commissioner establish a five-step sequential evaluation process for disability determinations:

1) If the claimant is doing substantial gainful activity, the claimant is not disabled.

2) If the claimant does not have a severe medically determinable physical or mental impairment – *i.e.*, an impairment that significantly limits his or her physical or mental ability to do basic work activities – the claimant is not disabled.

3) If the claimant has a severe impairment(s) that meets or equals one of the listings in Appendix 1 to Subpart P of the regulations and meets the duration requirement, the claimant is disabled.

4) If the claimant's impairment does not prevent him or her from doing his or her past relevant work, the claimant is not disabled.

5) If the claimant can make an adjustment to other work, the claimant is not disabled. If the claimant cannot make an adjustment to other work, the claimant is disabled.

---

awarded benefits with a disability onset date of January 22, 2011, the day following the entry of the ALJ's decision. Accordingly, plaintiff now seeks review of ALJ McNeil's decision in order to obtain DIB benefits for the closed period from May 31, 2008 to January 21, 2011.

*Rabbers v. Comm'r of Soc. Sec.,* 582 F.3d 647, 652 (6th Cir. 2009) (citing §§ 404.1520(a) (4)(i)-(v), 404.1520(b)-(g)). The claimant has the burden of proof at the first four steps of the sequential evaluation process. *Id.*; *Wilson* v. *Comm'r of Soc. Sec.,* 378 F.3d 541, 548 (6th Cir. 2004). Once the claimant establishes a prima facie case by showing an inability to perform the relevant previous employment, the burden shifts to the Commissioner to show that the claimant can perform other substantial gainful employment and that such employment exists in the national economy. *Rabbers,* 582 F.3d at 652; *Harmon v. Apfel,* 168 F.3d 289, 291 (6th Cir. 1999).

### B. The Administrative Law Judge's Findings

The ALJ applied the sequential evaluation process and made the following findings of fact and conclusions of law:

> 1. The [plaintiff] meets the insured status requirements of the Social Security Act through December 31, 2013.
>
> 2. The [plaintiff] has not engaged in substantial gainful activity since May 31, 2008, the alleged onset date (20 CFR 404.1571 *et seq.*).
>
> 3. The [plaintiff] has the following severe impairments: dyspnea and bipolar disorder (20 CFR 404.1520(c)).
>
> 4. The [plaintiff] does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526).
>
> 5. After careful consideration of the entire record, the [ALJ] finds that the [plaintiff] has the residual functional capacity to perform medium work as defined in 20 CFR 404.1567(c) with the following limitations: she can occasionally lift 50 pounds, frequently lift 25 pounds, and push or pull 25 pounds using hand or foot controls. Due to mental impairments, the claimant can understand, remember, and follow simple and detailed instructions. She can persist to complete simple tasks and she can interact occasionally with others. She can adapt to daily work that does not require strict output demands such as timed, counted, or precision production.

3

6. The [plaintiff] is capable of performing past relevant work as a tool cutter.[2] This work does not require the performance of work-related activities precluded by the claimant's residual functional capacity (20 CFR 404.1565).

7. The [plaintiff] has not been under a disability, as defined in the Social Security Act, from May 31, 2008, through the date of this decision (20 CFR 404.1520(f)).

(Tr. 14-21).

### C. Judicial Standard of Review

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. § 405(g) and involves a twofold inquiry: (1) whether the findings of the ALJ are supported by substantial evidence, and (2) whether the ALJ applied the correct legal standards. *See Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009); *see also Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 745-46 (6th Cir. 2007).

The Commissioner's findings must stand if they are supported by "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (citing *Consolidated Edison Co. v. N.L.R.B.*, 305 U.S. 197, 229 (1938)). Substantial evidence consists of "more than a scintilla of evidence but less than a preponderance. . . ." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007). In deciding whether the Commissioner's findings are supported by substantial evidence, the Court considers the record as a whole. *Hephner v. Mathews*, 574 F.2d 359 (6th Cir. 1978).

The Court must also determine whether the ALJ applied the correct legal standards in the disability determination. Even if substantial evidence supports the ALJ's conclusion that the plaintiff is not disabled, "a decision of the Commissioner will not be upheld where the SSA fails

---

[2] Plaintiff's past relevant work also included work as a nurse's aide, meat cutter, driver, and customer service representative. (Tr. 157).

to follow its own regulations and where that error prejudices a claimant on the merits or deprives

the claimant of a substantial right." *Rabbers,* 582 F.3d at 651 (quoting *Bowen v. Comm'r of Soc.*

*Sec.,* 478 F.3d 742, 746 (6th Cir. 2007)). *See also Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541,

545–46 (6th Cir. 2004) (reversal required even though ALJ' s decision was otherwise supported

by substantial evidence where ALJ failed to give good reasons for not giving weight to treating

physician's opinion, thereby violating the agency's own regulations).

### D. Specific Errors

On appeal, plaintiff raises three assignments of error: (1) the ALJ erred in weighing the

medical opinions of record regarding plaintiff's mental impairments; (2) the ALJ erred by not

properly considering the impact of plaintiff's obesity and other physical impairments in

formulating plaintiff's residual functional capacity (RFC); and (3) the ALJ erred by relying on

answers from the VE which were based on improper hypothetical questions and by not resolving

conflicts between the VE's testimony and the Dictionary of Occupational Titles (DOT).

Plaintiff's arguments will be addressed in turn.

1. The ALJ's assessment of the opinion of plaintiff's treating psychiatrist is not supported by substantial evidence.

Plaintiff asserts the ALJ erred in not giving controlling or significant weight to the

opinions of her treating mental health providers, Sandeep Singh Saroch, M.D., and Roslyn E.

Feierstein, Ph.D.  Plaintiff further argues that the ALJ erred by giving the most weight to the

opinions of the state agency reviewing psychologists and failing to properly evaluate the opinions

of Dr. Saroch, Dr. Feierstein, and consultative examining psychologist Stephen P. Fristch,

Psy.D., as required by 20 C.F.R. § 404.1527.  The Commissioner responds that the ALJ properly

5

evaluated these opinions as required by the regulations and that his decision is substantially supported by the record as a whole.

In his decision, the ALJ assigned "significant weight" to the opinions of Kevin Edwards, Ph.D., and Catherine Flynn, Psy.D., the state agency reviewing psychologists, noting that their opinions were consistent with the supported portions of Dr. Fritsch's opinion and with the credible portion of plaintiff's reports of activities of daily living. Consultative examiner Fritsch's opinion was given "some weight" to the extent it was supported by the objective medical evidence of record. The opinion of plaintiff's treating physician, Dr. Saroch, was given "less weight" as the ALJ determined that it was not supported by treatment records and was inconsistent with the credible portion of plaintiff's reported activities of daily living. The ALJ's decision does not include a discussion or assessment of Dr. Feierstein's treatment records. For the following reasons, the undersigned finds that the ALJ erred in weighing the opinion evidence of record regarding plaintiff's mental impairments.

"In general, the opinions of treating physicians are accorded greater weight than those of physicians who examine claimants only once." *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 529-30 (6th Cir. 1997). Likewise, a treating physician's opinion is entitled to weight substantially greater than that of a nonexamining medical advisor. *Harris v. Heckler*, 756 F.2d 431, 435 (6th Cir. 1985); *Lashley v. Sec'y of H.H.S.*, 708 F.2d 1048, 1054 (6th Cir. 1983). The weight given a treating physician's opinion on the nature and severity of impairments depends on whether it is supported by sufficient medical data and is consistent with other evidence in the record. 20 C.F.R. § 404.1527(c)[3]; *Harris*, 756 F.2d 431 (6th Cir. 1985). If a treating physician's

---

[3] Regulation 20 C.F.R. § 404.1527 was amended effective March 26, 2012. The provision governing the

"opinion on the issue(s) of the nature and severity of [a claimant's] impairment(s) is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case," the opinion is entitled to controlling weight. 20 C.F.R. § 404.1527(c)(2); *see also Walters*, 127 F.3d at 530. If not contradicted by any substantial evidence, a treating physician's medical opinions and diagnoses are afforded complete deference. *Harris*, 756 F.2d at 435. *See also Cohen v. Sec'y of H.H.S.*, 964 F.2d 524, 528 (6th Cir. 1992). The opinion of a nonexamining physician is entitled to little weight if it is contrary to the opinion of the claimant's treating physicians. *Shelman v. Heckler*, 821 F.2d 316, 321 (6th Cir. 1987). If the ALJ rejects a treating physician's opinion, the ALJ's decision must be supported by a sufficient basis which is set forth in his decision. *Walters*, 127 F.3d at 529; *Shelman*, 821 F.2d at 321.

If the ALJ does not give the treating source's opinion controlling weight, then the ALJ must consider a number of factors when deciding what weight to give the treating source's opinion. 20 C.F.R. § 404.1527(c). These factors include the length, nature and extent of the treatment relationship, and the frequency of examination. 20 C.F.R. § 404.1527(c)(2)(i)(ii); *Wilson*, 378 F.3d at 544. In addition, the ALJ must consider the medical specialty of the source, how well-supported by evidence the opinion is, how consistent the opinion is with the record as a whole, and other factors which tend to support or contradict the opinion. 20 C.F.R. § 404.1527(c)(3)-(6); *Wilson*, 378 F.3d at 544. The ALJ must give "good reasons" for not according controlling weight to a treating physician's opinion. *Wilson*, 378 F.3d at 544. The ALJ must likewise apply the factors set forth in § 404.1527(c)(3)-(6) when considering the

---

weight to be afforded a medical opinion was previously found at § 404.1527(d).

weight to give a medical opinion rendered by a non-treating source.  20 C.F.R. § 404.1527(c).

When considering the medical specialty of a source, the ALJ must generally give "more weight

to the opinion of a specialist about medical issues related to his or her area of specialty than to

the opinion of a source who is not a specialist."  20 C.F.R. §§404.1527(c)(5).

As to plaintiff's mental health impairments, the record includes treatment notes from

plaintiff's treating mental health providers, Dr. Saroch and Dr. Feierstein, as well as a report

from Dr. Fritsch following a consultative psychological examination.

The record evidence from Dr. Saroch consists of treatment records from March 2008 to

October 2010 (Tr. 293-310, 322-53) and a mental capacities assessment completed in December

2010.  (Tr. 354-56).  At plaintiff's initial diagnostic interview in March 2008, Dr. Saroch noted

that plaintiff had symptoms of depression and anxiety and had a depressed, tearful, irritable, and

anxious mood.  (Tr. 294-97).  Dr. Saroch further reported that plaintiff had psychotic, manic, and

post-traumatic stress disorder symptoms, paranoid thinking, disorganized thoughts, and

symptoms of post-traumatic stress.  (Tr. 294-95).  Plaintiff was assigned a Global Assessment of

Functioning (GAF) score[4] of 50 and diagnosed with bipolar disorder and moderate depression.

Her prognosis was noted as guarded.  (Tr. 297).  The next month, Dr. Saroch noted that plaintiff

did not report any depressive, manic, or psychotic symptoms and reported only anxiety at work,

and her mood and affect were calm with coherent and logical thought processes.  (Tr. 298).  Dr.

---

[4] A GAF score represents "the clinician's judgment of the individual's overall level of functioning." American Psychiatric Association, Diagnostic and Statistical Manual of Mental Disorders, p. 32 (4th ed., text rev. 2000).  The GAF score is taken from the GAF scale, which "is to be rated with respect only to psychological, social, and occupational functioning."  *Id.*  The GAF scale ranges from 100 (superior functioning) to 1 (persistent danger of severely hurting self or others, persistent inability to maintain minimal personal hygiene, or serious suicidal act with clear expectation of death).  *Id.* at 34.  Individuals with scores of 41-50 are considered to have "serious symptoms" or having "serious impairment in social, occupational, or school functioning."  *Id.*

Saroch determined that plaintiff was significantly improved from her initial visit and stable. *Id*.

However, in May 2008, plaintiff reported intermittent depression with both suicidal and

homicidal thoughts and Dr. Saroch found plaintiff's affect to be calm but depressed with a sad

mood. (Tr. 299). Plaintiff's condition appeared to have deteriorated further in June 2008, as she

was noted as having ongoing depressive thoughts, retarded motor activity and speech, and a sad

and depressed mood and affect. (Tr. 300). Dr. Saroch again found her prognosis to be guarded.

*Id*. Later that month plaintiff presented to Dr. Saroch with depressive and manic symptoms and

was noted as agitated, depressed and anxious and her prognosis was guarded. (Tr. 301).

Plaintiff's condition appeared to have improved slightly in July 2008 as she reported decreased

depressive and no manic symptoms, yet her anxiety level had increased and her prognosis

remained guarded. (Tr. 302). At a second July 2008 visit, Dr. Saroch noted that plaintiff was

exhibiting signs of increasing depression; her prognosis was guarded. (Tr. 303). Records from

September 2008 to January 2009 contain similar reports of depressive symptoms, findings of sad

and depressed mood and affect, and ongoing guarded prognoses, aside from an improved average

prognosis from December 2008 to March 2009. (Tr. 304-10). January 2010 records document

depressed mood, low concentration/attention, and feelings of worthlessness/hopelessness, and

findings of sad mood and depressed affect. (Tr. 323). In February 2010, plaintiff reported an

increase in manic and depressive symptoms. Mental status exam revealed she was unkempt and

disheveled; displayed agitated motor activity; had a depressed, tearful, and anxious affect and

mood; and was listed as unstable. Her prognosis was guarded. (Tr. 324). The March 19, 2010

examination included findings of retarded motor activity and speech, sad mood, and depressed

affect. Plaintiff reported experiencing anhedonia, low energy and concentration, and feelings of

9

"worthlessness/hopelessness." (Tr. 326). On April 19, 2010, plaintiff reported ongoing

depressed mood, low concentration, anhedonia, increased sleep, and feelings of

"worthlessness/hopelessness." (Tr. 329). Dr. Saroch again observed that plaintiff had retarded

motor activity and speech, sad mood, and depressed affect, and assigned plaintiff a guarded

prognosis. *Id.* June and July 2010 records show an improvement as plaintiff reported less

depressive symptoms and no symptoms of anxiety. (Tr. 333, 342). Plaintiff's condition

worsened again as evidenced by Dr. Saroch's August and September 2010 examinations. In

August 2010, Dr. Saroch observed that plaintiff was fidgety and anxious and presented with

tremors and an anxious affect. He gave plaintiff a guarded prognosis. (Tr. 351). On September

22, 2010, plaintiff reported an irritable mood, racing thoughts, and psychomotor agitation. (Tr.

352). On examination, Dr. Saroch found plaintiff to be fidgety, irritable and anxious, with fair to

limited insight and judgment, and assigned a guarded prognosis. *Id.* The October 2010

treatment record includes plaintiff's reports of depressive symptoms, Dr. Saroch's findings of

calm but depressed affect and mood, and a stable prognosis. (Tr. 353). Dr. Saroch's records also

include plaintiff's prescriptions for Lithium, folic acid, Lamictal, Geodon, Vistaril, Ativan,

Xanax, and Valium. (Tr. 325, 327-28, 330, 332, 334-36, 339, 341, 343-44, 349-50).

On December 15, 2010, Dr. Saroch completed a mental capacities assessment for plaintiff

and found that she had largely poor abilities to make occupational adjustments, performance

adjustments, and personal-social adjustments due to her mood swings, low concentration, racing

thoughts, panic attacks, irritability, paranoid thinking, thought disorganization, mood instability,

depressed mood, forgetfulness, inability to persist at tasks, lack of frustration tolerance, and

inability to control her moods. (Tr. 354-55). Dr. Saroch further opined that plaintiff suffers from

10

a lifelong bipolar disorder and that he did not anticipate recovery for plaintiff, but merely control of her symptoms through medication management. (Tr. 356). Dr. Saroch noted that plaintiff had recently experienced a severe depressive episode and that she experiences anxiety symptoms which impair her ability to function in public places without undue stress. *Id.* While Dr. Saroch checked a notation indicating that he believed plaintiff was capable of managing her own benefits, he also opined that plaintiff "has high harm avoidance and low persistence along with poor self directiveness and self-transcendence [which] likely prevent her holding a job." *Id.*

> The ALJ's "analysis" and discussion of Dr. Saroch's opinion is a mere two sentences:

> Less weight is given to Dr. Sandeep Saroch who completed a Mental RFC Assessment dated December 15, 2010 in which he opined that the claimant's bipolar disorder results in a primarily poor ability to make occupational, performance, and personal adjustments. Less weight is given to Dr. Saroch as his opinion is not supported by the source treatment records and it is inconsistent with the credible portion of the activities of daily living evidence.

(Tr. 19-20).

The justifications given by the ALJ for discounting Dr. Saroch's opinion fail to satisfy the "good reasons" standard set forth by the Sixth Circuit in *Wilson*. First, the ALJ's determination that Dr. Saroch's opinion is not supported by his own treatment records is not substantially supported by the record. While the Commissioner notes that the ALJ provided specific citations to April 2008 treatment records in which plaintiff reported only "intermittent depression" and mild sadness and anxiety only at work (Tr. 18, citing Tr. 298-99),[5] the Commissioner fails to acknowledge the plethora of subsequent treatment records and objective findings showing a deterioration of plaintiff's condition which support Dr. Saroch's opinion on the severity of

---

[5] Notably, plaintiff's reports of occasional and mild depression and anxiety at work only were made one to two months before she stopped working and applied for disability benefits. *See* Tr. 137 (plaintiff stopped working on May 31, 2008); Tr. 298-99 (April 1, 2008 and May 7, 2008 examination findings).

11

plaintiff's bipolar disorder. *See, e.g.*, Tr. 294-97 (noting plaintiff's depressed, irritable, and anxious mood and symptoms of psychosis, mania, paranoid thinking, and post-traumatic stress disorder); Tr. 299 (plaintiff observed as having sad mood and depressed affect); Tr. 300 (plaintiff was found to have retarded motor activity and speech and a sad and depressed affect and mood and was given guarded prognosis); Tr. 301 (plaintiff's prognosis remained guarded and she reported irritable mood, distractibility, racing thoughts, and low energy and concentration and was observed as being agitated, anxious, depressed, and irritable); Tr. 302 (Dr. Saroch observed plaintiff to be anxious and continued to categorize her prognosis as guarded); Tr. 303 (plaintiff reported psychomotor retardation and agitation, depressed mood, and low energy and examination included findings of depressed affect and mood and a guarded prognosis was assigned); Tr. 304 (plaintiff had retarded motor activity and speech and presented with a sad mood and prognosis was guarded); Tr. 305 (plaintiff reported depressed mood, anhedonia, increased sleep, low energy and concentration, and feelings of worthlessness, stating that she "was not doing much or getting out anymore" and Dr. Saroch found her to be depressed and sad and gave her a guarded prognosis); Tr. 306 (same); Tr. 323-24 (plaintiff reported depression, low energy and concentration, anhedonia, psychomotor retardation, and irritable mood and Dr. Saroch observed that plaintiff was anxious, tearful, and depressed with fair to limited insight and judgment). Further, Dr. Saroch assigned plaintiff a GAF of 50 (Tr. 297), which supports his opinion that plaintiff suffers from serious symptoms due to her bipolar disorder.[6] Notably, the ALJ failed to provide any specific references whatsoever to the purported internal inconsistencies. The ALJ's conclusory statement that Dr. Saroch's opinion is not supported by

---

[6] Dr. Saroch's finding in this regard is consistent with and supported by the GAF scores of 47 and 45

12

his treatment records fails to satisfy the "good reasons" requirement under *Wilson* and is not supported by substantial evidence.

Second, the ALJ's determination that Dr. Saroch's opinion should be given "less weight" as it is "inconsistent with the credible portion" of plaintiff's reported activities of daily living similarly suffers from the absence of any supporting explanation. The Commissioner's argument that the ALJ's determination is supported because the ALJ cited plaintiff's subjective statements that her medication was helping her and she viewed therapy "as a way to get herself and life back" (Tr. 18, citing Tr. 312) again fails to recognize the substantial record evidence contradicting the ALJ's finding. *See, e.g.*, Tr. 261 (plaintiff reported to Dr. Fritsch that she was severely depressed, had frequent crying spells and intermittent suicidal ideation); Tr. 314 (plaintiff reported to Dr. Feierstein that she is "extremely frustrated and depressed with her life"); Tr. 32-33 (plaintiff testified that she suffered from depression and feelings of worthlessness, was unable to concentrate, and often stayed in bed most of the day). The ALJ's selective citation to portions of the record supporting his opinion, while excluding contradictory evidence, does not fairly portray plaintiff's activities of daily living and is not a sufficiently good reason for discounting the opinion of her treating psychiatrist under *Wilson*. Moreover, plaintiff's statement referenced by the ALJ and the Commissioner was made to Dr. Feierstein in the following context: "The [plaintiff] was self-referred; she sees Dr. Saroch for medication. He recently adjusted her medications. She prefers psychotherapy as 'a way to get herself and life back, medications help.'" (Tr. 312). While this statement supports the ALJ's assessment that plaintiff was responding to treatment, this snapshot view of the evidence fails to properly account for the

---

assigned to plaintiff by Dr. Feierstein and Dr. Fritsch, respectively. *See* Tr. 263, 319.

impact of plaintiff's mental impairments on her functional abilities.  This is especially true given

the nature of bipolar disorder, which is characterized by mood swings and oscillating between

very good moods and depression.  *See* http://www.ncbi.nlm.nih.gov/pub

medhealth/PMH0001924/ (last visited January 9, 2013).

Third, the ALJ's decision does not reflect an analysis of the § 404.1527(c) regulatory

factors.  Dr. Saroch is plaintiff's treating psychiatrist and a medical doctor specializing in

psychiatry, two facts which the ALJ failed to note in discounting his opinion.  Further, the length

of the treatment relationship and the frequency with which Dr. Saroch has treated plaintiff are

regulatory factors the ALJ likewise failed to consider in assessing that his medical opinion is

deserving of "less weight" than those of the non-examining, state agency reviewing

psychologists.  The record evidence demonstrates that plaintiff treated with Dr. Saroch on an

approximately monthly basis for over two years, from March 2008 to October 2010.  (Tr. 293-

310, 322-53)  By not utilizing the factors listed in 20 C.F.R. § 404.1527(c)(2) to determine the

weight to be given the opinion of Dr. Saroch, the ALJ's rejection of the treating psychiatrist's

assessment of plaintiff's functional capacity is not supported by substantial evidence.  *Cole v.*

*Astrue*, 661 F.3d 931, 939-40 (6th Cir. 2011) ("[T]he ALJ's failure to follow agency rules and

regulations 'denotes a lack of substantial evidence, even where the conclusion of the ALJ may be

justified based upon the record.'") (quoting *Blakley*, 581 F.3d at 407).  The Court cannot say that

Dr. Saroch's opinion "is so patently deficient that the Commissioner could not possibly credit it"

to excuse the ALJ's failure in this case.  *Wilson*, 378 F.3d at 546.

Fourth, the ALJ failed to consider the consistency of Dr. Saroch's opinion with the other

record evidence, including evidence from Dr. Feierstein, plaintiff's treating psychologist, and

14

from Dr. Fritsch, the consultative psychologist.  20 C.F.R. § 404.1527(c)(4).  The treatment

records from Dr. Feierstein consist of progress notes from February to May 2009.  (Tr. 312-19).

The notes include an intake evaluation and Dr. Feierstein's observations that plaintiff had

attention difficulties; was tearful and focused on the negative; had poor to average social skills;

and exhibited poor judgment but fair insight.  (Tr. 317-18).  Dr. Feierstein diagnosed plaintiff

with bipolar disorder and anxiety disorder; assigned plaintiff a GAF score of 45; and opined that

plaintiff had a severe social and occupational impairment due to her bipolar disorder.  (Tr. 319).

In April 2009, Dr. Feierstein observed that plaintiff was withdrawn and avoidant; depressed and

anxious; had poor to fair judgment and insight; and was labile and hysterical.  (Tr. 313).  Dr.

Feierstein assessed that plaintiff was making poor choices but appropriately utilizing therapy.  *Id.*

Similar observations were made by Dr. Feierstein in May 2009 at which time she noted

plaintiff's willingness to adhere to therapy recommendations.  (Tr. 312).

      The ALJ's decision does not discuss Dr. Feierstein's records aside from noting the

diagnosis of bipolar disorder (Tr. 14) and the citation discussed *supra* regarding plaintiff's

preference for psychotherapy as a "way to get her life back."  (Tr. 18, citing Tr. 312).  Dr.

Feierstein's treatment notes reflect objective and clinical findings that are fully consistent with

Dr. Saroch's assessment and the ALJ's failure to address this evidence amounts to an error of

law.  *See* 20 C.F.R. § 404.1527(c) ("Regardless of its source, we will evaluate every medical

opinion we receive.").

      The ALJ also failed to consider the consistency of Dr. Saroch's opinion with that of the

consultative psychologist, Dr. Fritsch.  Dr. Fritsch opined that plaintiff had a moderate

impairment in her ability to maintain attention, concentration, persistence and pace with simple,

repetitive tasks; a mild impairment in her ability to relate to others, including coworkers and supervisors; and a marked impairment in her ability to withstand stress and pressures associated with day-to-day work activity. (Tr. 263). The only contrary evidence was from the non-examining state agency psychologists who offered their opinions without the benefit of Dr. Saroch's 2010 treatment records (Tr. 322-53) or Dr. Saroch's December 2010 mental capacities assessment. (Tr. 354-56). Although the opinion of a state agency consultant "may be entitled to greater weight than a treating source medical opinion if the State agency . . . consultant's opinion is based on a review of a complete case record," Social Security Ruling 96-6p, such is not the case here. Therefore, the opinions of the non-examining state agency psychologists do not provide substantial evidence for rejecting Dr. Saroch's opinion or for the ALJ's RFC opinion. *See Blakley*, 581 F.3d at 409 ("we require some indication that the ALJ at least considered these facts before giving greater weight to an opinion that is not based on a review of a complete case record"). *See also Shelman*, 821 F.2d at 321; *Harris*, 756 F.2d at 435.

For these reasons, the ALJ's rejection of the treating psychiatrist's opinion is not supported by substantial evidence and should be reversed.[7]

2. The ALJ erred in failing to account for the effects of plaintiff's obesity and other non-severe physical impairments in formulating plaintiff's RFC.

For her second assignment of error, plaintiff contends that the ALJ erred by failing to consider the severity of many of her physical impairments or consider their impact when formulating her RFC. Specifically, plaintiff asserts the ALJ failed to consider the impact of her obesity, degenerative joint and disc disease, chronic cervical and lumbar strain, muscle weakness,

---

[7] As the Court determines the ALJ's decision is not supported by substantial evidence, the Court need not reach plaintiff's argument that the ALJ erred in his assessment of Dr. Fritsch's opinion.

range of motion deficits, and elevated blood pressure. Plaintiff's argument focuses on the ALJ's failure to address the impact of her obesity, noting that Social Security policies require the ALJ to consider obesity at every step of the sequential evaluation process when formulating a plaintiff's RFC. Plaintiff asserts that the omission of this analysis, as well as the lack of severity determinations with plaintiff's other physical impairments (aside from her dyspnea, which the ALJ determined was a severe impairment), requires reversal.

In opposition, the Commissioner states that the ALJ properly determined that plaintiff's only severe physical impairment was dyspnea based on the record evidence. The Commissioner contends that the ALJ's decision finding no other severe impairments was based on plaintiff's failure to meet her burden of proof at Step Two of the sequential evaluation. Accordingly, the Commissioner asserts that the ALJ's decision is substantially supported and should be affirmed. For the following reasons, the undersigned finds plaintiff's arguments well-taken.

A severe impairment or combination of impairments is one which significantly limits the physical or mental ability to perform basic work activities. 20 C.F.R. § 404.1520(c). In the physical context, this means a significant limitation upon a plaintiff's ability to walk, stand, sit, lift, push, pull, reach, carry or handle. 20 C.F.R. § 404.1521(b)(1). Basic work activities relate to the abilities and aptitudes necessary to perform most jobs, such as the ability to perform physical functions, the capacity for seeing and hearing, and the ability to use judgment, respond to supervisors, and deal with changes in the work setting. 20 C.F.R. § 404.1521(b). Plaintiff is not required to establish total disability at this level of the sequential evaluation. Rather, the severe impairment requirement is a threshold element which plaintiff must prove in order to establish disability within the meaning of the Act. *Gist v. Sec'y of H.H.S.*, 736 F.2d 352, 357

17

(6th Cir. 1984). An impairment will be considered nonsevere only if it is a "slight abnormality which has such minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education, and work experience." *Farris v. Sec'y of H.H.S.*, 773 F.2d 85, 90 (6th Cir. 1985) (citing *Brady v. Heckler*, 724 F.2d 914, 920 (11th Cir. 1984)). The severity requirement is a *"de minimus* hurdle" in the sequential evaluation process. *Higgs v. Bowen*, 880 F.2d 860, 862 (6th Cir. 1988). *See also Rogers*, 486 F.3d at 243 n.2.

Plaintiff's social security application demonstrates that she sought disability benefits for "bipolar disorder, depression, endometriosis, back pain, [and] knee pain." (Tr. 137). The record includes treatment notes documenting the following physical impairments: obesity (Tr. 236, 252, 286, 290, 305); degenerative joint disease (Tr. 259, 290); degenerative disc disease (Tr. 254, 290); and chronic cervical and lumbar strain (Tr. 253-54). Further, the record demonstrates that plaintiff has a history of muscle weakness (Tr. 255); range of motion deficits (Tr. 253, 256-58); and elevated blood pressure. (Tr. 252).

In his decision, the ALJ failed to consider the severity of any of these conditions at Step Two of the sequential evaluation. The ALJ briefly addressed some of this evidence in his analysis of plaintiff's credibility, noting that the objective evidence demonstrated only "mild rotoscoliosis of the thoracolumbar spine convexity to the left" and "moderate narrowing involving the L4-S1 intervertebral discs[,]" in support of his finding that plaintiff's subjective reports of back and knee pain were not fully credible as they were not supported by objective findings. *See* Tr. 17, citing Tr. 259. The ALJ further relied on the December 2008 physical examination findings of consultative examiner Stephen Nutter, M.D., that plaintiff had largely

18

normal musculoskeletal results aside from some difficulty squatting, *id.*, citing Tr. 253, and records from a July 2008 emergency room visit during which plaintiff did not complaint of back or knee pain and was found to have full range of motion, Tr. 18, citing Tr. 236-37, in support of his decision to discount plaintiff's credibility. Yet, the ALJ's decision is devoid of any finding as to whether these conditions for which plaintiff sought disability benefits were severe or non-severe impairments.

The ALJ is to "consider all evidence in [plaintiff's] case record" when making a disability determination. 20 C.F.R. § 404.1520(a)(3). Here, where a plaintiff has sought benefits for back and knee impairments and the record includes diagnoses of degenerative joint and disc disease from state agency reviewing physician Dr. Klyop (Tr. 290), it is absolutely essential that there is some discussion as to the severity of these impairments and their effect on plaintiff's functional abilities in order for the Court to be able to meaningfully review the ALJ's decision. The Commissioner's argument, that plaintiff bears the burden of demonstrating the severity of her impairments, misses the mark. As the ALJ found plaintiff to have both severe mental and physical impairments, he was required to consider all non-severe impairments in the remaining steps of the sequential evaluation process. *Simpson v. Comm'r of Soc. Sec.*, 344 F. App'x 181, 190 (6th Cir. 2009) (citing *Anthony v. Astrue*, 266 F. App'x 451, 457 (6th Cir. 2008)). Thus, the ALJ erred not only by failing to make a severity determination regarding plaintiff's physical impairments, but also by failing to consider the effect of these conditions in the following steps of the process in evaluating plaintiff's disability claim.

The ALJ also erred by failing to address plaintiff's obesity or its impact on plaintiff's RFC. Social Security Ruling 02-1p[8] recognizes that obesity may affect an individual's ability to perform the exertional functions of sitting, standing, walking, lifting, carrying, pushing, and pulling, as well as an individual's ability to perform postural functions such as climbing, balancing, stooping, and crouching. SSR 02-01p, 2000 WL 628049, at *6. "[O]besity, in combination with other impairments, 'may' increase the severity of the other limitations." *Bledsoe v. Barnhart*, 165 F. App'x 408, 412 (6th Cir. 2006) (quoting SSR 02-1p). SSR 02-01p does not mandate a particular mode of analysis for an obese disability claimant. *Id.* at 412. However, the ALJ is to explain his conclusions on the effects, if any, caused by obesity on a plaintiff's functional abilities. SSR 02-1p, 2002 WL 34686281, at *7.

The Commissioner argues that the ALJ did not err because he considered the opinions of both Dr. Nutter[9] and Dr. Klyop[10] who noted plaintiff's obesity in their reports. *See Coldiron v. Comm'r of Soc. Sec.*, 391 F. App'x 435, 443 (6th Cir. 2010) (finding no violation of SSR 02-1p where ALJ relied on physician opinions that accounted for claimant's obesity in determining RFC, thereby incorporating "the effect that obesity has on the claimant's ability to work into the RFC he constructed"); *Bledsoe*, 165 F. App'x at 412 ("the ALJ does not need to make specific mention of obesity if he credits an expert's report that considers obesity"). Yet, the ALJs in both

---

[8] "Social Security Rulings do not have the force and effect of law, but are 'binding on all components of the Social Security Administration' and represent 'precedent final opinions and orders and statements of policy and interpretations' adopted by the Commissioner. 20 C.F.R. § 402.35(b)(1). In *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 549 (6th Cir. 2001), the court refrained from ruling on whether Social Security Rulings are binding on the Commissioner in the same was as Social Security Regulations, but *assumed* that they are. [The Court] makes the same assumption in this case." *Ferguson v. Comm'r of Soc. Sec.*, 627 F.3d 269, 272 n.1 (6th Cir. 2010) (emphasis in original).

[9] Dr. Nutter's examination included a finding that plaintiff had a body mass index of 39, which is considered "obese" under SSR 02-1p.

[10] Dr. Klyop's assessment includes the following mention of plaintiff's obesity, "[plaintiff] is obese and has some mild [degenerative joint disease] and [degenerative disc disease], but reflexes, sensation, and strength are

20

*Coldiron* and *Bledsoe* explicitly discussed the claimants' obesity in their findings of fact.
*Coldiron,* 391 F. App'x at 443; *Bledsoe,* 165 F. App'x at 412. Here, in contrast, the ALJ did not
explicitly mention plaintiff's obesity in his discussion of the medical evidence, in his RFC
finding, or anywhere else in his decision. The complete omission of any mention of plaintiff's
obesity in the ALJ's decision distinguishes the instant matter from *Coldiron* and *Bledsoe* such
that the undersigned cannot find that the ALJ properly considered this impairment. The ALJ did
not, as the plain language of SSR 02–1p demands, "explain how [he] reached [his] conclusions
on whether obesity caused any physical or mental limitations." SSR 02–1p, 2002 WL
34686281, at *7; *see also Norman v. Astrue*, 694 F. Supp.2d 738, 741-42 (N.D. Ohio 2010).
While there is no medical opinion of record that plaintiff is significantly limited as a result of her
obesity, the complete exclusion of any mention of plaintiff's obesity makes it impossible for the
Court to tell if the ALJ actually considered this condition in formulating the RFC. Given the
complete omission of any mention of plaintiff's obesity in the ALJ's decision, the Court finds the
ALJ erred by failing to consider the impact of this condition as required by SSR 02-1p.
Accordingly, plaintiff's second assignment of error should be sustained.

    3. The ALJ erred by relying on the VE's testimony.

    For her final assignment of error, plaintiff asserts that the ALJ erred by relying upon
flawed vocational testimony because: (1) the hypothetical question presented to the VE did not
properly characterize her functional abilities; (2) the ALJ improperly defined plaintiff's
employment as a tool cutter as past relevant work; and (3) the ALJ failed to resolve conflicts
between the VE's testimony and the DOT.

---

[within normal limits], and gait is normal." (Tr. 290).

In light of the Court's finding that the ALJ failed to properly weigh the opinion of Dr. Saroch, the ALJ's RFC finding is also without substantial support in the record. Consequently, the hypothetical questions presented to the VE do not properly reflect plaintiff's impairments and/or limitations. Accordingly, the ALJ erred by relying on this vocational testimony to carry his burden at Step 5 of the sequential evaluation process. *See White v. Comm'r of Soc. Sec.*, 312 F. App'x 779, 789 (6th Cir. 2009) (ALJ erred in relying on answer to hypothetical question because it simply restated residual functional capacity which did not accurately portray claimant's impairments). Because the ALJ's hypothetical questions failed to accurately portray plaintiff's impairments, the vocational expert's testimony in response thereto does not constitute substantial evidence that plaintiff could perform the work identified by the VE. Therefore, plaintiff's final assignment of error should be sustained.[11]

**IV. This matter should be reversed for an award of benefits.**

When the non-disability determination is not supported by substantial evidence, the Court must decide whether to reverse and remand the matter for rehearing or to reverse and order benefits granted. The Court has authority to affirm, modify or reverse the Commissioner's decision "with or without remanding the cause for rehearing." 42 U.S.C. § 405(g); *Melkonyan v. Sullivan,* 501 U.S. 89, 100 (1991).

Generally, benefits may be awarded immediately "only if all essential factual issues have been resolved and the record adequately establishes a plaintiff's entitlement to benefits." *Faucher,* 17 F.3d at 176; *see also Abbott v. Sullivan*, 905 F.2d 918, 927 (6th Cir. 1990). The Court may award benefits where the proof of disability is strong and opposing evidence is

---

[11] Given the recommendation that this matter be reversed for an award of benefits, the Court declines to

lacking in substance, so that remand would merely involve the presentation of cumulative evidence, or where the proof of disability is overwhelming. *Faucher,* 17 F.3d at 176; *see also Felisky v. Bowen,* 35 F.3d 1027, 1041 (6th Cir. 1994); *Mowery v. Heckler,* 771 F.2d 966, 973 (6th Cir. 1985). Such is the case here.

Here, proof of disability is overwhelming and remand would serve no purpose other than delay. As discussed above, based on the mental residual functional capacity assessment and treatment records of Dr. Saroch, plaintiff's severe psychiatric condition prevents her from sustaining gainful employment. *See* Tr. 41 (the VE testified that plaintiff's limitations as provided by Dr. Saroch's supported opinion precluded her from employment). Accordingly, this matter should be remanded for an award of benefits from plaintiff's disability onset date of May 31, 2008 to January 21, 2011, the date of the ALJ's decision.

### IT IS THEREFORE RECOMMENDED THAT:

The decision of the Commissioner be **REVERSED** pursuant to Sentence Four of 42 U.S.C. § 405(g) consistent with this opinion and remanded for an award of benefits.

Date: 1/18/2013

Karen L. Litkovitz
United States Magistrate Judge

---

reach plaintiff's remaining vocational errors.

23

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
### WESTERN DIVISION

JEWELL HEIGHTON,
    Plaintiff,

    vs.

COMMISSIONER OF
SOCIAL SECURITY,
    Defendant.

Case No. 1:12-cv-38
Dlott, J.
Litkovitz, M.J.

## NOTICE

Pursuant to Fed. R. Civ. P. 72(b), **WITHIN 14 DAYS** after being served with a copy of the recommended disposition, a party may serve and file specific written objections to the proposed findings and recommendations. This period may be extended further by the Court on timely motion for an extension. Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. If the Report and Recommendation is based in whole or in part upon matters occurring on the record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon, or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections **WITHIN 14 DAYS** after being served with a copy thereof. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See Thomas* v. *Arn,* 474 U.S. 140 (1985); *United States* v. *Walters,* 638 F.2d 947 (6th Cir. 1981).